# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DENNIS ALEXANDER PLAYER,        )
                                )
            Petitioner,          )
                                )
        v.                       )      1:10CV282
                                )
ALVIN KELLER,                    )
                                )
            Respondent.          )

## MEMORANDUM OPINION AND ORDER

**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1). On April 5, 2002, in the Superior Court of Randolph County, Petitioner was convicted of committing a crime against nature, sexual activity by a substitute parent, taking indecent liberties with a child, first-degree rape of a child, manufacturing or possessing an electronic communication interception device, and interception of wire or electronic communication without consent in cases 99 CRS 59, -5029-31, and -11330-31. (Docket Entry 6, Ex. 2 at 38-52.) He was subsequently sentenced to a total of 336 to 422 months of imprisonment. (Id.) Petitioner did pursue a direct appeal, but his conviction and sentence were affirmed in an unpublished opinion issued by the North Carolina Court of Appeals on August 6, 2002. (Id. Ex. 1.) Petitioner did not appeal further. However, on March 19, 2009, he did file a motion for appropriate relief, which the trial court denied on April 8, 2009. (Id. Exs. 5, 6.) Petitioner then sought certiorari from the North

Carolina Court of Appeals, which refused his request on August 24, 2009. (Id. Exs. 7, 9.) Petitioner's later pursuit of a writ of certiorari from the North Carolina Supreme Court also failed. (Id. Exs. 10, 11.) Petitioner next signed and dated his instant Petition as submitted to prison authorities for mailing on April 8, 2010. (Docket Entry 1 at 15.) This Court received said Petition on April 12, 2010. (Id. at 2.)[1]

**Facts**

The basic facts of the case, as set out by the North Carolina Court of Appeals on direct review, are as follows:

> The defendant married Tressa Davis Fox on 31 August 1996. Fox had two children from previous relationships, includinga [sic] daughter, T, who was fourteen years old at the time of trial. Defendant and Fox also had a child together named Taylor.
> 
> Sometime in the spring of 1999, Linda Smith, a guidance counselor at T's school, heard rumors that T had a sexual encounter with a boy at the middle school. Eventually, T and her friend came to talk to Smith and T confirmed to Smith that she had sex with another student. Then, Smith testified that T stated "she had been having sexual encounters with [the defendant]." Smith called the Department of Social Services.
> 
> Michelle Robbins, a social worker with the Randolph County Department of Social Services (DSS), interviewed T regarding the alleged sexual abuse. T told Robbins that "when she was around eight years old her stepfather raped her." T further stated that she and defendant had oral and sexual intercourse "on a regular basis." DSS contacted the Randolph County Sheriff's Department regarding T's allegations. Lieutenant Thomas L. McIver interviewed T who told Lieutenant McIver that defendant had sexually abused her beginning when she was about eight years old and that the abuse included both sexual and oral intercourse. T stated that the last time defendant had sexual intercourse with her was sometime

---

[1] Pursuant to the parties' consent, this matter was referred to the undersigned United States Magistrate Judge for all proceedings. (Docket Entry 10.)

-2-

between Thanksgiving and Christmas in 1998. T told Lieutenant McIver that defendant "put his private part into my vagina" and "moved it in and out." Lieutenant McIver prepared a written statement regarding the allegations, which was signed by T on 19 February 1999.

On 5 March 1999, Lieutenant McIver discovered a "device for hacking the telephone cord to a recorder" and a container that helda [sic] tape recorder beneath Fox's home. Defendant's fingerprints were found on the device, and defendant admitted at trial to purchasing the device because he "needed information to find out something that I needed to find out."

At trial, defendant sought to introduce evidence that the allegations of the abuse did not arise until after defendant had confronted Fox about an adulterous relationship with Charles Norris and that the allegations were part of a plan to "get [defendant] out of the picture" so Fox could continue with her relationship with Norris. The State moved to exclude the evidence. Fox then testified on voir dire that the relationship with Norris did not begin until after T made the allegations against defendant. Fox also testified that she never told T to fabricate the allegations. Defendant then testified on voir dire that he confronted Fox regarding the adulterous relationship and threatened to take custody of the couple's child, to which Fox responded that she would "ruin" him first. The trial court sustained the State's objection to defendant's proffered testimony.

State v. Player, No. COA01-1173, 2002 WL 1796974 (N.C. App. Aug. 6,2002).

### **Petitioner's Claims**

Petitioner raises the following eight possible grounds for relief:

1) Insufficient evidence because the physical examinations of the victim were more consistent with a one-time sexual encounter with one of her peers than multiple encounters with Petitioner, the examinations did not conclusively show signs of abuse, the victim

made inconsistent statements, and certain examiners questioned the victim's truthfulness. (Docket Entry 1 at 6.)

2) Ineffective assistance because trial counsel did not contest the evidence, mounted a defense "lacking preparatory readiness," and failed to investigate "critical conflicting instances perpetrating suspect with a crime." (Id. at 7.)

3) "Abuse of discretion" by the trial judge in sustaining "all prosecution objections preventing" Petitioner from presenting "evidence of victim party for perjury, subordinating to perjury, and giving false declarations to law officials." He adds that the judge did not allow a defense expert to testify and did not replace defense counsel at Petitioner's request. (Id. at 9.)

4) Prosecutorial misconduct because the prosecution submitted "untestimonial/unsupported hearsay evidence," argued "missing witness testimony and misled jurors," knowingly used false testimony, and "vouched for [an] unsworn/unproduced witness without allowing the defense to test the trustworthiness of [the] witness." (Id. at 11.)

5) "Compulsory clause violation" caused when Petitioner was not allowed to "produce corroborating evidence and supportive witnesses that can dispute the prosecution's case allegations/accusations of sex child rape." (Id. Attach. A-1)

6) Confrontation Clause violation caused when "[i]ncriminating, unpresent witness' forsworn testimony were used by the state prosecution supporting this conviction." (Id.)

7) Ineffective assistance of counsel on appeal because "[u]ndisclosed evidence contradicting victim's credibility was preserved at trial for appeal purposes, yet not pursued." Instead, counsel presented only "unsupported claims at trial that were futile." Also, counsel failed to raise a claim based on his own ineffectiveness at trial. (Id. Attach. A-2.)

8) A due process violation that allegedly occurred when the State withheld exculpatory evidence in the form of "audio phone tapping recordings" and "video camera recordings featuring victim/physician discussions at the hospital treating victim for ADHD and prescribing Ritalin medication. (Id. Attach A-3.)

## Discussion

Respondent has moved to dismiss the Petition for failure to meet the one-year statute of limitations established by 28 U.S.C. § 2244(d)(1). (Docket Entry 5.)[2] In order to assess this argument, the Court first must determine when Petitioner's one-year

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Here, Petitioner did pursue a direct appeal, but only with the North Carolina Court of Appeals. He did not continue his appeal with the North Carolina Supreme Court and, therefore, could not have filed for certiorari with the United States Supreme Court; his convictions thus became final 35 days after the North Carolina Court of Appeals issued its opinion on August 6, 2002, i.e., September 10, 2002. See Harb v. Keller, No. 1:09CV766, 2010 WL 3853199, at *2-5 (M.D.N.C. Sep. 28, 2010) (unpublished). The time began to run on that date and expired a year later without Petitioner having made any further filings in any court. Therefore, his Petition is out of time under § 2244(d)(1)(A).

Petitioner pursued post-conviction relief in the state courts via a motion for appropriate relief. However, Petitioner did not make that filing until March 19, 2009, well after his time to file in this Court had already expired. Filings made after the one-year filing period has expired do not revive or restart the time to file. Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not actually argue that his Petition is timely under § 2244(d)(1). Instead, he makes two arguments that the Court should consider his Petition despite its untimeliness. First, Petitioner contends that he was a layman proceeding without counsel and was ignorant of the applicable time limits. (Docket Entry 1 at 14.) This argument appears to represent a request for equitable tolling. The United States Supreme Court has determined that the one-year limitation period is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2562 (2010). Equitable tolling

may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Unfamiliarity with the legal process and lack of representation do not constitute grounds for equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Moreover, waiting years to raise claims shows lack of due diligence. Pace, 544 U.S. at 418.

Petitioner's claimed ignorance of the law and lack of representation by counsel thus do not qualify as "extraordinary" circumstances warranting equitable tolling. Further, Petitioner has not shown the diligence required to qualify for equitable tolling. He gives no valid explanation as to why he allowed more than six years to pass between the end of his direct appeal and the filing of his motion for appropriate relief in the state courts.

Petitioner also argues that the Court should review his Petition due to his actual innocence. He raises this point in his Petition (Docket Entry 1 at 14) and explains it in more detail in his response (Docket Entry 8) to Respondent's Motion to Dismiss.

As a threshold matter, the Court must distinguish between substantive and procedural claims of actual innocence. A substantive claim of actual innocence arises where a petitioner contends that his actual innocence provides him with a freestanding constitutional claim. See, e.g., Herrera v. Collins, 506 U.S. 390 (1993). However, such claims have not been recognized as a basis for habeas relief. Id. at 400; Buckner v. Polk, 453 F.3d 195 (4th

Cir. 2006). If Petitioner has raised such a claim, it cannot proceed.

To have any chance of success, claims of actual innocence must operate procedurally as an adjunct to an independent constitutional violation in the state proceedings. In such circumstances, a petitioner's innocence can serve as a gateway for having his constitutional claim heard even though a procedural default otherwise would preclude review. Schlup v. Delo, 513 U.S. 298, 315 (1995). More specifically, actual innocence satisfies the "miscarriage of justice" exception to procedural default rules. Id. Petitioner's argument mainly falls into this category. He contends that, based on his actual innocence, the Court should hear his substantive claims despite the applicable time-bar. (Docket Entry 8 at 14.)

The standard for demonstrating actual innocence is very high. A petitioner must "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. That evidence must demonstrate that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Thus, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. Moreover, a petitioner

must show factual innocence and not merely legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).

Petitioner faces a further challenge because Respondent has not simply interposed a procedural bar, but rather has asserted a statute of limitation defense under 28 U.S.C. § 2244(d)(1). Neither the United States Supreme Court nor the United States Court of Appeals for the Fourth Circuit have recognized an actual innocence exception in this context. Other federal courts of appeals have divided over this issue. Compare Souter v. Jones, 395 F.3d 577, 597-601 (6th Cir. 2005) (allowing equitable tolling of statute of limitation based on showing of actual innocence under Schlup standard) with Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005) (ruling that actual innocence has no bearing on time-bar).

Assuming that an actual innocence exception exists in this context, Petitioner falls far short of the necessary showing. Petitioner has produced no new evidence, but instead spends most of his response brief rearguing the evidence and rulings from his trial. Much of the argument simply involves discussions of the merits of the claims raised in the Petition. Petitioner's submission does not even approach the level needed to prevail under Schlup. If an actual innocence exception to the applicable statute of limitations exists, it does not apply in this case. Petitioner's Habeas Petition is untimely and will be dismissed.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 5) is granted, that the Habeas Petition (Docket Entry 1) is dismissed, and that this action is dismissed.


                                         /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                                   **United States Magistrate Judge**

March 30, 2011